

**SIGNED this 1st day of July, 2025**

/s/ Nicholas W. Whittenburg
**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR**
**THE EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Charles Gary Blankenship, II** | ) | **No. 1:25-bk-11129-NWW** |
| | ) | **Chapter 13** |
| **Debtor** | ) | |

**MEMORANDUM OPINION**

On May 16, 2025, the pro se debtor filed two duplicative emergency motions [Doc. No. 52 and Doc. No. 53] for stay pending appeal of the court's orders denying debtor's various motions, including–debtor's motion to enforce the automatic stay filed on May 8, 2025, [Doc. No. 11], debtor's emergency motion to enforce the automatic stay filed on May 9, 2025 [Doc. No. 20], debtor's emergency motion to impose the automatic stay nunc pro tunc [Doc. No. 28], debtor's emergency motion for temporary restraining order and injunctive relief [Doc. No. 30], and debtor's motion for contempt and sanctions for willful violation of the automatic stay and abuse of process

[Doc. No. 32], which sought sanctions against the debtor's purported landlord, SUSO 4 HIXSON, LP, and against its counsel, Benjamin T. Reese, Esq., and Spears, Moore, Rebman & Williams, P.C. for purported violations of the automatic stay, abuse, and misconduct. On May 15, 2025, the court conducted a lengthy hearing on the motions, which debtor attended by phone at his request [See Doc. No. 12]. Following the hearing, the court found that because the current bankruptcy case is the debtor's third case within a year, pursuant to 11 U.S.C. § 362(c)(4)(A) no automatic stay came into effect at the commencement of this bankruptcy. The court further found that the debtor had not rebutted the presumption by clear and convincing evidence that the case was not filed in good faith and, consequently, refused the debtor's request to impose the automatic stay pursuant to 11 U.S.C. § 362(c)(4)(B). As explained orally following the hearing, the court found that the debtor's case was an abuse of the bankruptcy process. As no automatic stay precluded any actions taken by SUSO following the commencement of the case, the court denied the debtor's request for sanctions against SUSO and its counsel.

Simultaneously with this motion for stay pending appeal, the debtor also filed a motion requesting the court reconsider its ruling and impose the automatic stay of § 362(a) [Doc. No. 50]. As explained in a separate opinion and by separate order, the court denied debtor's motion to reconsider. With the denial of that motion, the status quo regarding the automatic stay remains unchanged–the stay of the acts otherwise proscribed by 11 U.S.C. § 362(a) never came into effect with the commencement of this bankruptcy case. Consequently, a stay of the court's order pending appeal would work no benefit to the debtor because staying the order would not have the effect of imposing the automatic stay. Futility aside, the court will deny the debtor's motion for stay pending appeal and set forth its analysis below.

**I. Background**

The debtor has filed three individual bankruptcy cases since November 20, 2024; each case filed without assistance of counsel. In each of debtor's three petitions, he listed himself as the sole proprietor of Scenic City Fitness, Inc. (though the business is a Tennessee corporation). Each of debtor's cases sought the protection of the automatic stay to stop eviction proceedings filed in state court against Scenic City Fitness.[1]

The first case (1:24-bk-12915-NWW) was filed under chapter 11, subchapter V. One day after filing, the court issued a notice to debtor that there were numerous missing documents required by the bankruptcy code and bankruptcy rules. None of these documents were ever filed. Likewise, though the court authorized the debtor to pay the filing fee in installments, none of the installments were ever paid. Ultimately, the case was dismissed on January 16, 2025, upon the United States trustee's motion to dismiss.

The debtor's second bankruptcy case was filed less than a month later on February 12, 2025, under chapter 13. (1:25-bk-10348-NWW). As in the first case, the petition was filed absent numerous required schedules and documents, and again, the debtor was notified of the deficiencies. The court once again authorized the debtor to pay the filing fee in installments, but again that fee was not paid. The second case was dismissed by operation of law on April 1, 2025, pursuant to 11 U.S.C. § 521(i).

Debtor's present case, his third case in less than a year, was filed as a petition for chapter 13 on May 6, 2025, but he then later filed a chapter 11 list of 20 largest creditors and a chapter 11 statement of current monthly income . Despite these erroneous filings, the debtor once again failed

---

[1] After the court's May 15, 2025, rulings in this case, Scenic City Fitness, Inc. filed a chapter 11 case [1:25-11279 NWW] on May 21, 2025, with the assistance of counsel.

3

to timely file all schedules and documents required by 11 U.S.C. §521(a) and Fed. R. Bankr. P. 1007. In particular, the debtor failed to file the chapter 13 plan, pay advices, Schedule C, Schedule D, Schedule E/F, Schedule G, Schedule H, Schedule J, Declaration about Schedules, Chapter 13 statement of currently monthly income, creditor matrix, and debtor's electronic notice election.

While not filing required schedules and documents, the debtor simultaneously inundated the court with the filing of redundant motions and complaints. For example, the debtor filed four motions [Doc. Nos. 11, 20, 28, and 30] seeking to enforce the automatic stay by way of motion, temporary restraining order, and injunction, even though, pursuant to 11 U.S.C. § 362(c)(4)(A), no automatic stay arose because of the pendency and dismissal of the debtor's prior bankruptcy cases. Debtor also filed a motion for contempt and sanctions [Doc. No. 32] against the landlord of Scenic City Fitness, SUSO, and against its counsel, Benjamin T. Reese, Esq., and Spears, Moore, Rebman & Williams, P.C. for violations of an automatic stay that did not exist with the filing of debtor's third bankruptcy case. As mentioned above, these motions were denied after a lengthy hearing held on May 15, 2025, in which the court allowed debtor to participate by phone at his request. It was at this point that debtor filed his motion to reconsider and the instant motion for stay pending appeal. Because the debtor's bad faith conduct in this case and in his prior cases plays an integral part in its ruling, the court will continue detailing the facts before beginning its legal analysis.

Among debtor's other duplicative filings were five motions [Doc. Nos. 13, 27, 33, 34, and 35] seeking to disqualify SUSO's attorney, Benjamin T. Reese, Esq., and the law firm of Spears, Moore, Rebman & Williams, P.C. for a purported conflict of interest. A hearing was held on these motions June 5, 2025. Although being provided notice of the hearing and ordered to appear in person [Doc. No. 49], debtor did not appear. The court found the motions to be baseless and an

attempt by debtor to deprive SUSO of its choice of counsel and disadvantage SUSO in this case and a pending state court eviction proceeding involving the business, Scenic City Fitness, Inc. The court denied these motions.

On May 14, 2025, one day before the May 15, 2025 hearing, debtor inexplicably filed two complaints naming SUSO, Benjamin T. Reese, and Spears, Moore, Rebman & Williams PC, as defendants [Case No. 25-ap-01007 and Case No. 25-ap-01008]. With these complaints, debtor raised the identical claims raised in the aforementioned motions filed in the bankruptcy case (i.e. violation of the automatic stay, disqualification of counsel, abuse of process). Debtor did not pay the filing fee, did not secure issuance of summonses for these adversary proceedings, nor did he provide proof he had served the complaints upon the named defendants. Accordingly, the adversary proceedings were dismissed.

Debtor once again filed an application to pay the filing fee in installments [Doc. No. 4]. Debtor also filed a motion for clarification and request for schedule of § 341 meeting of creditors [Doc. No. 7]. The court set these motions for hearing also on June 5, 2025. Debtor did not appear at the hearing. At the hearing the court noted that debtor's filing fees across the three cases now total $2,364.00. The court also noted the meeting of creditors had been set for June 17, 2025, and notice of this meeting was sent to debtor on May 10, 2025. For the reasons stated orally at the hearing, the court denied the motions.

Further, debtor filed a motion for continuance and ADA accommodation due to a mental health condition [Doc No. 12], requesting he be excused from appearing in person at any hearings and that all mandatory hearings or deadlines be postponed indefinitely to accommodate him. The court did allow debtor to appear by phone at the May 15, 2025 hearing, but denied his motion for

5

a blanket continuance and ADA accommodation without prejudice to his ability to request a continuance on an ad hoc basis.

On June 5, 2025, the court held a hearing on its order for debtor to appear and show cause why the case should not be dismissed as an abuse of the bankruptcy system with a bar to refiling. Debtor did not appear. As stated orally at the hearing, based on the totality of the circumstances, including the debtor's multiple bankruptcy filings, his repeated failure to satisfy his statutorily prescribed duties, and his failure to pay any filing fees, the court held that the current bankruptcy case was filed in bad faith, for the sole purpose of hindering and delaying debtor's creditors, and that the debtor's conduct was an abuse of the bankruptcy process. The court dismissed the case pursuant to 11 U.S.C. § 1307 and barred debtor from refiling for a period of 180 days pursuant to 11 U.S.C. §§ 105(a) and 349(a).[2] The court did note that it would entertain a motion to reconsider the bar to refiling should debtor choose to file with the assistance of counsel.

**II. Legal Analysis**

Before a party may request a stay from the district court, Federal Rule of Bankruptcy Procedure 8007 requires the party to first seek such relief from the bankruptcy court. *Antal v. Carroll (In re Antal)*, 2020 U.S. Dist. LEXIS 214670, *4, 2020 WL 6737547 (E.D. Mich. November 17, 2020) (citing Fed. R. Bankr. P. 8007(a)(1)). Because a stay pending appeal is similar to a preliminary injunction, the same factors govern the decision of whether to issue a stay: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood

---

[2] Despite debtor's attempts to revive his case, including this motion and his motion for stay pending appeal, the court notes that the debtor still has not filed the missing documents required by the Bankruptcy Code, including missing schedules, a plan of reorganization, and a creditor matrix, among other things. Accordingly, even if the case had not been dismissed on June 6, 2025, it would have been dismissed by operation of law pursuant to 11 U.S.C. § 521(I) on June 23, 2025.

that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Id*. at *4-5 (citing *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

### (a) Likelihood of success on the merits.

Debtor's motions, which the court denied at the May 15, 2025 hearing, sought to enforce or impose the automatic stay and to sanction SUSO and its counsel for purported violations of the automatic stay. An overview of the automatic stay and its limits is critical to the analysis of whether the debtor is likely to prevail in his appeal of the court's decision.

The automatic stay is broad and prohibits certain conduct by creditors, including the commencement or continuation of an action or proceeding against the debtor to collect a prepetition debt, any act to create, enforce, or perfect a lien against property of the bankruptcy estate, or any act to gain possession or exercise control over property of the estate. *See* 11 U.S.C. § 362(a). Courts have long recognized that the automatic stay is a fundamental debtor protection. *See, e.g.*, *Midlantic Nat'l Bank v. New Jersey Dept. of Env't Prot.*, 474 U.S. 494, 503 (1986). When the stay is utilized by debtors operating in good faith and fulfilling their responsibilities under the Bankruptcy Code, the automatic stay not only provides a debtor with a "breathing spell" in order to propose a plan of repayment, *See Fed. Land Bank of Louisville v. Glenn (In re Glenn)*, 760 F.2d 1428, 1436 (6th Cir.1985), but also serves the interests of creditors by facilitating an orderly administration of the bankruptcy estate and protecting the debtor's assets from being carved up by any singular creditor. *See City of Chicago v. Fulton,* 592 U.S. 154, 157 (2021*)*; *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 382–83 (6th Cir. 2001); *Boucher v. Shaw*, 572 F.3d 1087,1092 (9th Cir. 2009); *Hunt v.*

*Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986). Consequently, the automatic stay is intended to preserve the status quo existing at the time of the bankruptcy filing, in the best interest of the debtor and creditors alike. *See Fulton*, 141 S.Ct. at 590. However, debtors are not endlessly afforded the protections of the automatic stay.

Because of perceived abuses caused by serial bankruptcy filings, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Pub. L. 109-8, 119 Stat. 23 (enacted April 20, 2005). The amendments to the bankruptcy code in BAPCPA included the addition of section 362(c)(4). This section provides in relevant part that no automatic stay goes into effect upon the filing of bankruptcy by an individual debtor "if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed". 11 U.S.C. § 362(c)(4)(A). This section does afford parties in interest, including the debtor, a means to impose the stay provided that the debtor "demonstrates that the filing of the later case is in good faith as to the creditors to be stayed." *Id.* §363(c)(4)(B). If imposed, the stay only becomes "effective on the date of the entry of the order allowing the stay to go into effect". 11 U.S.C. § 362(c)(4)(C). Finally, relevant to the determination of any request by a debtor to impose the stay, this section provides that if "2 or more previous cases under this title in which the individual was a debtor were pending within the 1-year period" then the "case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)". *Id.* § 362(c)(4)(D).

Although the Sixth Circuit has not addressed the standard to apply in the context of 'lack of good faith' under Section 362(c), courts have applied the 'totality of the circumstances' test to determine whether a debtor has rebutted the presumption that the case was filed in bad faith. *In re Riedy*, 517 B.R. 88, 91 (Bankr. W.D. Mich. 2014). "[T]these courts have considered the following

non-exhaustive list of factors: (i) the timing of the petition, (ii) how the debt arose, (iii) the debtor's motive, (iv) how the debtor's actions affected creditors, (v) why the debtor's case was dismissed, (vi) the likelihood that the debtor will have steady income throughout the case and will be able to fund a plan, and (vii) whether any party objects to the motion." *Id*. Arguably, the most important factor is the debtor's ability to fund and perform under a chapter 13 plan of reorganization. *Id*. at 93.

It is undisputed that the debtor had two bankruptcy cases that were pending but dismissed within a year of the filing of the present bankruptcy case. Accordingly, no automatic stay arose with the filing of this case. Construing the debtor's numerous motions as requests to impose the stay, the debtor bore the burden of rebutting the presumption that his case was filed in bad faith by clear and convincing evidence. At the May 15, 2025 hearing, the debtor failed to carry his burden of proof.

The debtor appeared at the hearing by phone, at his own request, and stated that he filed his case in good faith. However, he offered no proof to corroborate this conclusion. It is undisputed that he had not complied with his duty to timely file all the schedules and documents required by the bankruptcy code, just as he had failed to do in his two prior cases. It is undisputed that he did not pay the filing fees associated with any of his bankruptcy cases, including the current case. He offered no proof concerning his income and expenses or other evidence suggesting that he could successfully fund a plan of reorganization. In fact, although required to propose a chapter 13 plan within 14 days of filing his bankruptcy petition pursuant to Fed. R. Bankr. P. 3015(b), as of the hearing the debtor had filed no proposed plan. His sole purpose of filing bankruptcy was to stay an eviction proceeding pending in state court filed by SUSO against Scenic City Fitness. At the hearing, debtor produced no evidence suggesting he could pay postpetition rents as required by 11 U.S.C. § 365(d)(3). Nor was any evidence presented suggesting he could cure any defaults and

assure future performance under any lease with SUSO, preconditions for assumption of any lease under the Code.. 11 U.S.C. § 365(b)(1).

Despite debtor's professions of a good faith intention, the only difference between this case and the prior ones offered up was that he consulted with a "free legal service" in hopes this case would be successful. However, the debtor's actions and inactions refute his professions of good faith. His numerous and duplicitous filings seeking to delay SUSO coupled with his inability or refusal to comply with the duties imposed upon all debtors under 11 U.S.C. § 521 make clear that the debtor's true intention is to enjoy the benefits of bankruptcy without suffering any of the burdens. While the debtor has failed to file the documents required by the code, he has found ample time to file copious other motions. Moreover, debtor's motions have often taken contradictory positions: he sought sanctions for a stay violation while acknowledging in his motions to enforce/impose the stay (whether nunc pro tunc or not) that no stay was in effect; and he filed a motion for a blanket continuance of not only the hearings on his motions, but also for all deadlines in the case stating he could not appear in court because of a PTSD diagnosis (the court denied the motion but allowed the debtor to participate by phone)–and now debtor argues he was denied due process. This case has been frought with errors, deficiencies, and debtor's multifarious motions have taxed the court's and others time and resources needlessly. The multiple bankruptcy filings are an abuse of the bankruptcy process.[3]

The only thing that the debtor has proven clearly and convincingly is that he wants to enjoy the maximum relief afforded by the bankruptcy process (offered to honest but unfortunate debtors),

---

[3] SUSO's state court eviction action is only against Scenic City Fitness, Inc. The debtor is not a named defendant. At the hearing, the debtor stated he no longer owned the business but had dissolved the business and transferred his interest or the company assets to his wife or a business owned by his wife. Accordingly, even if the automatic stay went into effect upon the commencement of the debtor's case, it would not stay the state court action.

but without complying with any of the duties required by the bankruptcy code. Good faith cannot equate to an intention to take advantage of the automatic stay while seeking to avoid compliance with the mandates of a bankruptcy reorganization. The court must conclude that debtor's likelihood of success on appeal is small indeed.

### (b) The likelihood that the moving party will be irreparably harmed absent a stay and the prospect that others will be harmed if the court grants the stay.

The court will analyze the second and third factors together. Debtor argues he will suffer irreparable harm if a stay is not granted, including imminent loss of the leased premises, the destruction of his family business, and the elimination of all income necessary to support his household and his ability to pursue appellate review. Debtor's arguments, however, do not align with the schedules he filed, nor with his own proffer at the hearing.

As for debtor's arguments to preserve the business and its lease, these fail because the business is presently protected by the automatic stay. Scenic City Fitness, Inc. filed for Chapter 11 relief after the May 15, 2025 hearing, with the assistance of counsel. With it's bankruptcy, Scenic City Fitness enjoys the protections of the automatic stay.

Debtor's income argument fails because of his own schedules and proffer. Debtor's Schedule I lists him as unemployed and disabled. The only income he lists ($1,305.00) is shown coming from pension/retirement income. Debtor also stated somewhat vaguely at the hearing that he had dissolved Scenic City Fitness, Inc. and transferred the business to his wife, and that he did not receive income from the business. The court cannot find any basis to support debtor's income argument.

As for the risk of harm to others should the stay be imposed pending appeal, it is difficult to assess this factor because of debtor's filing deficiencies. Because debtor did not file schedules of

secured and unsecured creditors or file a chapter 13 plan, it cannot assess how all creditors of the debtor would be affected. As for the landlord creditor, SUSO, it has not proceeded against the debtor individually, and so a stay protecting the debtor would only work them harm if they decided to initiate proceedings for recovery against the debtor.

Having dispensed with these arguments, the court finds that the imposition of the stay in this case would not prevent any of the harms detailed by the debtor. In truth, any harm that could result to the debtor individually has come from his own mismanagement of his three cases. However, the court must note that this does not mean that debtor, in his individual capacity, may not soon have need of the relief offered by the bankruptcy process. Though the court's June 5, 2025 order dismissed the instant case, finding it to be an abuse of the bankruptcy system and barred the debtor from refiling for a period of 180 days, the court's order noted that it would entertain a motion to reconsider the bar to refiling if the debtor filed with the assistance of counsel.

**(c) The public interest in granting the stay.**

The final factor also weighs against the imposition of the stay pending appeal. Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), for situations just like this case. This is the kind of debtor that Congress sought to protect creditors and the entire bankruptcy system from–a debtor who abuses the process by hiding from his creditors while never taking any real steps to a fresh start. While the debtor argues that equity requires the stay be imposed to maintain the status quo, the court finds that Congress set the status quo in this case (the third case filed within a year, with prior cases dismissed for filing deficiencies, with no substantial changes and no reason to believe a plan of reorganization can be confirmed) as one where no automatic stay exists. The court will not disturb the status quo set by Congress.

### III. Conclusion

For the aforementioned reasons, and because the debtor has not overcome the presumption that his case was not filed in good faith, because the debtor is not likely to succeed on appeal, because debtor failed to prove irreparable harm, and because the public interests are best served by leaving the status quo (no automatic stay in effect) as Congress intended, the Court will deny debtor's motion for stay pending appeal by separate order.

###